**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | CR 11-8102-PCT-JAT |
| Plaintiff, | **ORDER** |
| vs. | |
| Zachary Zane Miles, | |
| Defendant. | |

Previously pending before the Court was Defendant's motion to suppress statements based on his allegation that his *Miranda* rights were violated and/or that his statements were not voluntary.[1] Both for the reasons stated on the record at the hearing and for the further reasons set forth below, the motion is denied.

**A.  Background**

The Government charged Defendant with sexually assaulting Nicole Miles during the early morning hours of April 13, 2011. On that same day, around 3:30 p.m., Defendant was interviewed by F.B.I. special agent Matt Dahl, and Criminal Investigator Sylvantes Begay. Defendant made incriminating statements during this interview.

---

[1] The Court denied the motion to suppress at the evidentiary hearing on October 27, 2011 and indicated that an order would follow.

**B.** *Miranda*

*Miranda v. Arizona*, 384 U.S. 436 (1966), contains procedural safeguards to protect an individual's Fifth Amendment privilege against self-incrimination. *Miranda* warnings must be given to a person when that person is in custodial interrogation. *Id.* at 444.

In this case, neither party disputes that Defendant was in custodial interrogation at the time the Agent questioned him. Instead, the parties dispute the adequacy of the warnings.

There is no required formulation of the *Miranda* warnings. *United States v. Connell*, 869 F.2d 1349, 1351 (9th Cir. 1989). However, if incorrect or incomplete warnings are given, then the *Miranda* warnings are inadequate. *Id*. at 1351-53. If the warnings are inadequate, any subsequent confession must be suppressed. *Id.* at 1353.

Here, the officers asked Defendant questions and determined that he spoke and read English, and that Defendant had gone to school up to twelfth grade. The Agent then provided Defendant with a form that contained written *Miranda* warnings. The Agent told Defendant to read the form and, when he reached the waiver paragraph, to read that paragraph aloud. Defendant read the waiver aloud and signed the waiver form. Defendant now contends that this process of advising him of his rights was inadequate. Specifically, Defendant argues that he was not orally told the purpose of the form, nor asked any questions about his understanding of the form. Thus, Defendant concludes that he was not adequately advised of his *Miranda* rights and that his subsequent statements should be suppressed.

Having listened to the audio recording of the interview, the Court finds that Defendant was given as much time as he desired to review the advisement of rights and waiver form (Exhibit 1). Further, Defendant did not have difficulty reading the waiver portion, aloud, in English. Finally, Defendant did not express any difficulty in reading or understanding the form. Based on the totality of the circumstances,[2] the Court finds Defendant was adequately advised of his *Miranda* rights and the Court will not suppress his statements on this basis.

---

[2] The Court should consider the totality of the circumstances in determining whether Defendant's waiver of his *Miranda* warnings was voluntary, knowing, and intelligent. *United States v. Vallejo*, 237 F.3d 1008, 1014 (9th Cir. 2001).

**C. Voluntariness**

Even after a *Miranda* waiver, the Government must establish the voluntariness of a confession by a preponderance of the evidence. *United States v. Kelley*, 953 F.2d 562, 564 (9th Cir. 1992). A "confession is involuntary only if the police use coercive means to undermine the suspect's ability to exercise his free will." *Pollard v. Galaza*, 290 F.3d 1030, 1033 (9th Cir.), *cert. denied* 123 S.Ct. 449 (2002); *Henry v. Kernan*, 197 F.3d 1021, 1026 (9th Cir. 1999). Impermissible coercive activity can include lengthy questioning, deprivation of food or sleep, physical threats of harm, and psychological persuasion. *Kelley*, 953 F.2d at 565. When a suspect alleges psychological coercion, the relevant question is whether the suspect's will was overborne when he confessed. *United States v. Miller*, 984 F.2d 1028, 1031 (9th Cir. 1993). Further, "[a] statement is involuntary if it is extracted by any sort of threats or violence, [or] obtained by any direct or implied promises, however slight, [or] by the exertion of any improper influence." *U.S. v. Coutchavlis*, 260 F.3d 1149, 1158 (9th Cir. 2001) (quoting *Hutto v. Ross*, 429 U.S. 28, 30 (1976)).

Here, Defendant alleges that his confession was involuntary because it was induced by a promise and/or by a threat which amounted to psychological coercion. Specifically, Special Agent Dahl told Defendant if he confessed, the Agent would tell the judge "Zach is not a bad guy." Exhibit 3 at 28, lines 11-12. Defendant claims this was a promise that induced a confession. Further, Defendant claims he was threatened that if he continued to maintain his innocence and the Agent had to go through the effort of proving him guilty the Agent would send Defendant to prison. Exhibit 3 at 21, lines 17-20. Defendant concludes that a promise-by-inference from this statement was that if Defendant confessed, he would not have to go to prison. Defendant concludes that these techniques used by the Agent caused his statements to be involuntary.

The question before the Court is whether these statements by the Agent were, "sufficiently compelling to overbear the suspect's will in light of all attendant circumstances." *United States v. Leon Guerrero*, 847 F.2d 1363, 1366 n. 1 (9th Cir. 1988). Initially, Defendant in this case maintained his innocence. However, after questioning from

the Agent, Defendant gave varying accounts of the events in question, some of which were inculpatory.

The Agent's suggestion that if Defendant confessed he would tell the judge he was not a bad guy does not rise to the level of a promise. As the Government notes, the Court of Appeals has held that telling a suspect that cooperating may have a positive impact on his sentence is not unduly coercive. *See e.e. United States v. Okafor*, 285 F.3d 842, 847 (9th Cir. 2002) ("inducements to cooperate are not improper and do not render a suspect's statement involuntary unless under the total circumstances it is plain that they have overborne the free will of the suspect.").

The Agent's statement (in the form of a hypothetical conversation the Agent might have with the victim) that if the Agent had to prove Defendant guilty, then Defendant would go to prison is a closer question.[3] As discussed above:

> A statement is involuntary if it is "extracted by any sort of threats or violence, [or] obtained by any direct or implied promises, however slight, [or] by the exertion of any improper influence." *Hutto v. Ross*, 429 U.S. 28, 30 (1976) *quoting Bram v. United States*, 168 U.S. 532, 542-43 (1897). This broadly-stated rule has not been applied to invalidate, per se, all statements made by a suspect in response to a promise made by law enforcement personnel. The promise must be sufficiently compelling to overbear the suspect's will in light of all attendant circumstances.[1] *See Hutto v. Ross*, 429 U.S. at 30, *Miller v. Fenton*, 796 F.2d 598, 608 (3d Cir.), cert. denied, 479 U.S. 989 (1986).
>
> > [1] Causation, including but-for causation, has never been the test for voluntariness. *Hutto v. Ross*, 429 U.S. at 30, 97 S.Ct. at 203. If the test was whether a statement would have been made but for the law enforcement conduct, virtually no statement would be deemed voluntary because few people give incriminating statements in the absence of some kind of official action. *See*

---

[3] Specifically, the Agent said,
> If you tell me that I did it, I'm sorry I did it, this is what happened, I can go back to your cousin, because she's entitled to know what happened, what I'm doing, and she's entitled to know that Zach, he felt bad, he made a mistake, he's sorry that he did it, and he's going to take full credit and responsibility for his own actions and be a man about it. Or I can say, Zach lied to me about it. I proved that he did it, and we're going to put him in prison for it.

Exhibit 3 at 21, lines 10-20.

| | |
|---|---|
| 1 | *Schneckloth v. Bustamonte*, 412 U.S. 218, 224-25 (1973). |
| 2 | *United States v. Guerrero*, 847 F.2d 1363, 1366 (9th Cir. 1988). The factors the Court should |
| 3 | consider in determining if the suspect's will was overborne "include the degree of police |
| 4 | coercion, the length, location and continuity of the interrogation, and the defendant's |
| 5 | maturity, education, physical condition, mental health, and age." *Brown v. Horell*, 644 F.3d |
| 6 | 969, 979 (9th Cir. 2011). |

For example, in *United States v. Tingle*, 658 F.2d 1332, 1334 (9th Cir. 1981), the Court,

> found a confession involuntary where the interrogating officer enumerated the suspect's crimes and her possible sentences; told her that he would put in a good word with the prosecution if she cooperated; told her that he would tell the prosecutor she was "stubborn or hard-headed" if she refused; suggested that her boyfriend had already implicated her; and told her that she would not see her two-year old again "for a while" if she didn't talk.

*United States v. Bautista*, 362 F.3d 584, 592-93 (9th Cir. 2004).

Conversely, in *Foster v. Uribe*, 2011 WL 2946368, *8 (E.D. Cal. 2011), the Court found that the statements made by the suspect were voluntary. In that case, the suspect, Foster, requested to contact his mother. *Id.* In response to that request, the officers informed him he would only see his mother in prison unless he confessed. *Id.* Foster then argued, "this was a clear suggestion that if he confessed, he would not have to see his mother in prison, meaning that he would not go to prison." *Id.* (internal quotations omitted). The Court disagreed with Foster's argument, finding, "The detective's statement was not a statement promising leniency by either the police, prosecution, or the court. Instead, the detectives informed Foster that he faced prison for a very long time unless he told the truth." *Id.*

Here, the Agent told Defendant that if he did not confess, and the Agent had to prove him guilty, Defendant would go to prison. The Court does not find this statement to be a promise or threat that overcame the Defendant's will. Specifically, although Defendant argues he could have inferred that if he did confess, he would not go to prison, the Agent never actually suggested that Defendant would not be going to prison. As a result the Court

does not find that a promise or threat was actually made. Instead, this statement by the Agent falls more in the category of simply advising the Defendant of the potential consequences of his crime. *See Okafor*, 285 F.3d at 847 ("We have held that 'recitation of the potential sentence a defendant might receive does not render a statement involuntary.'" (citation omitted)).

Moreover, even if the Agent's statements could be considered promises, the Court does not find that Defendant's will was overborne given all the circumstances. The interview was relatively short, Defendant had gone to twelfth grade in school, there is no evidence defendant had mental health problems, the defendant is not a minor and Defendant was in reasonably good physical condition. Further, as discussed by the Court on the record, Defendant though out the interview (including the end of the interview), continued to change his version of the events in question and reasserted some of his prior denials of guilt. Thus, through out the interview Defendant continued to assert his version of events, showing that he was not ceding his will to adopt the Agent's version of events. Thus, considering all of these factors, plus the Court's additional observations made on the record regarding the tone of the interview, the Court finds that the statements were voluntary.

**D. Conclusion**

Based on the foregoing,

**IT IS ORDERED** that the motion to suppress (Doc. 27) is denied.

DATED this 28th day of October, 2011.

James A. Teilborg
United States District Judge